FIRST DIVISION 
 NOVEMBER 4, 1996








No. 1-95-0192


VIOLA SWETS, )
 ) APPEAL FROM THE
 Plaintiff-Appellee, ) CIRCUIT COURT
 ) OF COOK COUNTY.
VILLAGE OF LANSING, )
 )
 Intervenor-Appellant, )
 )
v. )
 )
ALFRED TOVAR, ) HONORABLE
 ) E.J. RICHARDSON,
 Defendant. ) JUDGE PRESIDING.


 PRESIDING JUSTICE CAMPBELL delivered the opinion of the
court:
 Intervenor the Village of Lansing (Village) appeals the
January 18, 1995, order of the circuit court of Cook County
adjudicating the amount of the Village's workers' compensation
lien with regard to a personal injury lawsuit filed by plaintiff,
Viola Swets, against defendant, Alfred Tovar. On appeal, the
Village contends that the trial court erred in determining the
distribution of a settlement between plaintiff and defendant. 
For the following reasons, we reverse the judgment of the trial
court and remand this matter for further proceedings.
 The record reveals the following relevant facts. On Janu-
ary 20, 1994, plaintiff was struck by an automobile driven by
defendant while performing her employment duties as a school
crossing guard for the Village. As a result, plaintiff suffered
severe head injuries causing partial paralysis. 
 As of December 16, 1994, plaintiff had received medical
benefits under the Illinois Worker's Compensation Act (the Act)
in the amount of $268,659.37, and temporary total disability
benefits in the amount of $1,936.40. As plaintiff's employer,
the Village is required to pay for all reasonable and necessary
medical care pursuant to section 8(a) of the Act. 820 ILCS
305/8(a) (West 1994). Under section 8(b) of the Act, the Village
is also required to pay plaintiff temporary total disability
benefits as long as she remains totally incapacitated. 820 ILCS
305/8(b) (West 1994).
 On February 3, 1994, plaintiff filed a personal injury
lawsuit against defendant alleging that defendant's negligence
was the proximate cause of the injuries she sustained on Janu-
ary 20, 1994. Section 305/5 of the Act required that plaintiff
or her attorney notify the Village of the filing of her civil
lawsuit either by personal service or registered mail, and
further required that proof of such notification be filed in the
civil action. See 820 ILCS 305/5 (West 1994).
 However, the record does not show that either the plaintiff
or her attorney, James Lanting (Lanting), ever notified the
Village of the filing of the lawsuit against defendant. Further,
there is no indication that any notification was ever filed in
the circuit court. 
 On March 22, 1994, Janet Hood, the Claims Supervisor respon-
sible for payment of compensation benefits to plaintiff, had a
telephone conversation with Lanting. At that time, Lanting
failed to inform Hood that a civil lawsuit was pending on plain-
tiff's behalf against defendant.
 Subsequently, Lanting and plaintiff settled the lawsuit
against defendant in the amount of $100,000, the policy limit of
defendant's automobile insurance. After the settlement, defen-
dant's attorney, James Balog, contacted Lanting and inquired as
to whether Lanting was aware of any liens on the settlement
funds. Lanting replied that he knew of no such liens.
 On December 7, 1994, plaintiff's civil lawsuit was dismissed
pursuant to a settlement agreement. The consent of the Village
was neither requested nor given with regard to the settlement
agreement.
 On December 15, 1994, John F. Donahue, the attorney for the
Village, contacted Lanting and learned for the first time of the
civil lawsuit against defendant and the related settlement. On
December 19, 1994, the Village filed motions as follows: a
petition to intervene; a motion to adjudicate its worker's
compensation lien; a motion for a temporary restraining order; a
preliminary injunction; and a motion to vacate the dismissal
order previously entered in the case. 
 A hearing commenced on that same day. At the hearing,
Lanting represented to the trial court that the settlement funds,
a total of $100,000, were being held in his attorney escrow
account. The trial court granted the Village leave to intervene,
and ordered that the funds continue to be held in Lanting's
escrow account without any disbursement, pending a hearing for
adjudication of the amount of the Village's worker's compensation
lien.
 On January 18, 1995, the trial court entered an order
distributing the $100,000 settlement as follows:
 (1) Payment of plaintiff's attorney's
 one-third contingent fee .............$ 33,333.33

 (2) Reimbursement of costs to 
 plaintiff's attorney .................$ 425.67

 (3) Reimbursement of the Village's
 worker's compensation lien
 ($100,000 - $33,333.33 - $425.67) x .75
 ......................................$ 49,680.75

 (4) Additional attorney fees to 
 plaintiff's attorney ($100,000 -
 $333,333.33 - $425.67) x .25..........$ 16,560.25

 TOTAL........$ 100,000.00 

The Village filed a timely appeal of this distribution of the
settlement funds.
 On appeal, the Village contends that the trial court erred
in calculating the amount owed the Village out of plaintiff's
settlement. The Village argues that the trial court's distribu-
tion is contrary to the Worker's Compensation Act (Act). It is
not disputed that under the Act the Village has a lien upon
plaintiff's settlement award. 
 Section 305/5(b) of the Act provides in pertinent part as
follows:
 "(b) Where the injury or death for which
 compensation is payable under this Act was
 caused under circumstances creating a legal
 liability for damages on the party of some
 person other than his employer to pay damag-
 es, then legal proceedings may be taken
 against such other person to recover damages
 notwithstanding such employer's payment of or
 liability to pay compensation under this Act.
 In such case, however, if the action against
 such other person is brought by the injured
 employee or his personal representative and
 judgment is obtained and paid, or settlement
 is made with or without suit, then from the
 amount received by such employee or personal
 representative there shall be paid to the
 employer the amount of compensation paid or
 to be paid by him to such employee or person-
 al representative including amounts paid or
 to be paid pursuant to paragraph (a) of Sec-
 tion 8 of this Act.
 "Out of any reimbursement received by
 the employer pursuant to this Section, the
 employer shall pay his pro rata share of all
 costs and reasonable necessary expenses in
 connection with such third-party claim, ac-
 tion or suit and where the services of an
 attorney at law of the employee or dependents
 have resulted in or substantially contributed
 to the procurement by suit, settlement or
 otherwise of the proceeds out of which the
 employer is reimbursed, then, in the absence
 of other agreement, the employer shall pay
 such attorney 25% of the gross amount of such
 reimbursement." 820 ILCS 305/5(b) (West
 1994).
The Village argues that the trial court's order is contrary to
the Act as follows: (1) the order reduces the $100,000 settle-
ment amount by plaintiff's attorneys' one-third contingent fee
and costs; and (2) the order improperly augments plaintiff's
attorney fees by awarding plaintiff's attorney an additional 25%
out of the remaining funds.
 Our supreme court has determined that the plain meaning of
the Act dictates "an employer who has paid compensation to an
injured employee under the Act is entitled to be reimbursed from
the entire third-party recovery by the employee." Page v. Hib-
bard, 119 Ill. 2d 41, 518 N.E.2d 69, 71 (1987). Moreover, an
employer's workers compensation lien cannot be reduced or preju-
diced by the fact that the employee entered into a contingent fee
contract with his or her attorney requiring a fee in excess of
the 25% allowed under the Act. Mounce v. Tri-State Motor Transit
Co., Inc., 150 Ill. App. 3d 806, 502 N.E.2d 53, 56-7 (1986). The
words in section 5(b) "in the absence of other agreement" have
been construed by Illinois courts to refer to an agreement
between the employer-intervenor and the employee or his attorney. 
Lewis v. Riverside Hospital, 116 Ill. App. 3d 845, 850-51, 452
N.E.2d 611 (1983)(citing, inter alia, Vandygriff v. Commonwealth
Edison Co., 68 Ill. App. 3d 396, 397, 386 N.E.2d 318 (1979);
Railkar v. Boll, 125 Ill. App. 2d 203, 206, 260 N.E.2d 851
(1970).)
 In Vandygriff, this court reversed an order of the trial
court compelling the plaintiff's employer to pay the plaintiff's
attorneys a 40% fee based on the plaintiff's contract with his
attorneys. This court concluded:
 "Clearly, in the present case the plaintiff's
 attorneys' fees for obtaining reimbursement
 for Newberg must be based on the 25% Statu-
 tory fee and not the plaintiff's contract
 with his attorneys." Vandygriff, 68 Ill.
 App. 3d at 397-98.
 Similarly, in Railkar, the plaintiff recovered a judgment in
the amount of $5,000, for personal injuries against a defendant
after receiving workers' compensation benefits in the amount of
$9,800, for the same injuries. Plaintiff had a 50% fee contin-
gency contract with his attorney. Following adjudication of the
liens of the plaintiff's employer, the circuit court awarded the
plaintiff's attorney $2,137.89 for litigation expenses, then
$806.27 for attorney fees based on 25% of the judgment as reduced
by litigation expenses. On appeal, this court reversed, holding
that under the Act, the plaintiff's attorney was entitled to
receive only 25% of the judgment, computed on the entire judg-
ment, rather than on the judgment as reduced by litigation
expenses. Railker, 125 Ill. App. 2d at 209.
 In the present case, the trial court relied on Carlson v.
Powers, 225 Ill. App. 3d 410, 587 N.E.2d 1240 (1992), in distrib-
uting plaintiff's settlement proceeds. Carlson involved the
distribution of a settlement under the Hospital Lien Act. 770
ILCS 35/5 (West 1992). The Carlson court found that the Hospital
Lien Act "expressly provides that liens filed pursuant to its
provisions are inferior to attorneys' statutory liens." Carlson,
225 Ill. App. 3d at 413.
 We find that the trial court erred in relying on Carlson, as
the present case does not involve the Hospital Lien Act. The
Workers' Compensation Act does not provide that attorney contin-
gent agreements supersede the statutory fee amount of 25%. 
 Plaintiff responds that the cases relied upon by the Village
were overruled in Zuber v. Illinois Power Company, 135 Ill. 2d
407, 553 N.E.2d 385 (1990), citing Zuber for the proposition that
"* * * the fee contract entered into by the plaintiff and her
attorneys controls the amount of compensation due counsel." 
Zuber, 158 Ill. 2d at 392. However, plaintiff has misinterpreted
Zuber, and cited the case out of context. 
 In Zuber, the plaintiff's decedent was seriously injured
while working at an Illinois Power Company and died the following
day. Plaintiff was awarded workers' compensation benefits in the
amount of $224.41 per week for a period of 20 years from the
employer, R. Dron Electrical Company, Inc. Subsequently, plain-
tiff entered into a settlement with Illinois Power which provided
for a lump sum payment $302,466,54, and an annuity in the amount
of $900 per month for the plaintiff's life, at a cost of $86,529. 
The plaintiff's attorney took one-third of the $302,466.54 lump
sum payment, per a contingency contract, but did not claim a fee
with respect to the annuity portion of the settlement. At the
time of the settlement, the employer had already paid $73,128.63,
in benefits under the Workers Compensation Act. Zuber, 135 Ill.
2d at 410.
 Following the settlement, the trial court determined the
amount of attorney fees and costs to be paid by the employer pur-
suant to section 5(b) of the Act. The trial court allowed fees
and costs only on the employer's past payments of workers' com-
pensation benefits, the total of $73,128.63 in benefits that the
employer had already paid through the time of the plaintiff's
settlement with Illinois Power. The trial court deducted both a
25% attorney fee from the amount of past benefits in the amount
of $18,282.16, and costs totalling $24,829.21, then assessed
$4,469.25 as the employer's pro rata share of those expenses. 
The plaintiff placed $54,846.48 in an escrow account pending
resolution of the amount due to the employer based on its lien
for past payments of workers' compensation benefits after the
deduction of the undisputed attorney fee. The trial court
subtracted the employer's share of the expenses ($4,469.25) from
the amount in escrow and awarded the balance ($50,377.23) to the
employer. Zuber, 135 Ill. 2d at 873.
 The plaintiff appealed the trial court's apportionment of
fees and costs. On appeal, this court determined that fees and
costs recoverable under section 5(b) of the Act must be assessed
not only against the past compensation benefits already paid by
the employer, and for which the employer may claim a lien, but
also against the future compensation benefits that the employer
is relieved from paying as a result of the settlement. Basing
its calculations on the weekly compensation award of $224.41,
this court determined that the attorney fee attributable to that
amount was $56.10, computed at the statutory rate of 25% and that
the employer's pro rata share of the costs was $14.32. This
court computed costs in the same proportion as the weekly compen-
sation payment bore to the total of the lump sum award
($302,566.54) and the cost of the annuity ($86,529) that were
recovered in the settlement ($224.41/$388,995.54 x $24,829.21). 
This court ordered the employer to make payments of those amounts
to the plaintiff directly on a weekly basis. This court also
determined that the employer's proportionate share of the costs
attributable to the benefits already received by the plaintiff
was $4,667.89, and modified the amount to be returned to the
employer in connection with its past payments of compensation
benefits, accordingly.
 Upon petition for rehearing, this court entered a clarifica-
tion providing that weekly payments of attorney fees must be made
to the plaintiff directly rather than to her attorneys. This
court explained that the attorneys could not claim any additional
fee from the employer pertaining to the annuity because the
plaintiff had already paid counsel in full for the settlement of
her action against Illinois Power. Zuber, 135 Ill. 2d at 413. 
 On appeal to our supreme court, the employer argued that the
appellate court erred in assessing fees and costs against the
workers' compensation benefits that the employer is relieved from
paying in the future by reason of the plaintiff's settlement. 
The employer contended that under the Act, such fees and costs
may be assessed only against the amount of worker's compensation
benefits already paid at the time of the third-party recovery,
and for which the employer may claim a lien by reason of that
recovery.
 Relying on, inter alia, Lewis and Vandygriff, the supreme
court determined that the Act allows reimbursement of attorney
fees and costs to an employer based on both workers' compensation
benefits already paid and credits against the employer's future
compensation obligations. 
 However, the supreme court reversed that portion of the
appellate court's opinion which allowed the employer to pay to
the plaintiff directly the statutory attorney fees pertaining to
the annuity award. The supreme court noted that "For our purpos-
es here, the fee contract entered into by the plaintiff and her
attorneys controls the amount of compensation due counsel."
(Emphasis supplied). The supreme court noted that although the
contract entitled the attorneys to one-third of all amounts
recovered on the plaintiff's behalf, "[t]hat her attorneys failed
to take their contractual one-third of the annuity portion of the
settlement does not mean that they were not otherwise entitled to
a fee of that amount." Therefore, the supreme court concluded
that because the plaintiff's attorneys did not receive any fee
for recovery of the annuity, "in this case there will be no
double recovery of fees if they are the recipients of the statu-
torily required payments" of 25%. Zuber, 135 Ill. 2d at 422. 
 Contrary to plaintiff's contention, Zuber did not hold that
the Act is subservient to a contingent fee agreement, nor did
Zuber in any way "tacitly" overrule the cases relied upon by the
Village. It is clear that the plaintiff's attorneys in Zuber
were able to recover a one-third contingent fee on the plain-
tiff's lump sum settlement of $302,466.54, because the lump sum
payment was sufficient to satisfy both the reimbursement of the
employer's previously paid workers' compensation benefits and the
attorneys' one-third contingent fee, not because the contingent
fee agreement had priority over the employer's lien. 
 In the present case, a deficiency exists in the amount of
the settlement such that the amount recovered by plaintiff does
not cover the expenses paid by the Village. Further, the record
does not reveal that the $100,000 settlement was the product of
any trial, discovery process, or any unusual services rendered by
plaintiff's attorney Lanting for the benefit of the Village, as
in Zuber. (See, e.g., Scholtens v. Schneider, No. 79686, slip
op. at 8 (Ill. September 19, 1996) ("a litigant or a lawyer who
recovers a common fund for the benefit of persons other than
himself or his client is entitled to a reasonable attorney's fee
from the fund as a whole.") To the contrary, Lanting merely
settled the case for defendant's insurance policy limits and,
despite the statutory requirement, failed to notify the Village
of such settlement.
 Thus, we conclude that the trial court improperly reduced
plaintiff's settlement by one-third before distributing the
remaining funds. In order to comply with the Act, the settlement
proceeds must be considered as a whole, i.e., $100,000; then
reduced by $25,000, representing the statutory 25% amount in fees
to plaintiffs' attorney; then reduced by plaintiff's attorney's
costs of $425.67. The remaining $74,574.33 would be payable to
the Village for workers' compensation benefits already paid.
 For the reasons stated herein, we reverse the judgment of
the trial court and remand this matter for an order consistent
with this opinion.
 Reversed and remanded.
 BUCKLEY, J., and WOLFSON, J., concur.